# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FEDERAL TRADE COMMISSION,
STATE OF CALIFORNIA,
STATE OF ILLINOIS,
STATE OF MINNESOTA,
STATE OF NEW YORK,
STATE OF WASHINGTON
and
STATE OF WISCONSIN,

                *Plaintiffs*,

v.

AMGEN INC.
and
HORIZON THERAPEUTICS PLC,

                *Defendants*.

Case No. 1:23-cv-03053

Judge John F. Kness

## DEFENDANTS AMGEN INC. AND HORIZON THERAPEUTICS PLC'S JOINT MOTION TO MODIFY THE INTERIM CONFIDENTIALITY ORDER

Defendants Amgen Inc. ("Amgen") and Horizon Therapeutics plc ("Horizon"), through undersigned counsel, respectfully request that the Court order a limited modification to the Interim Confidentiality Order[1] (Dkt. 25) to allow certain Confidential Material, as defined in Paragraph 1 of the Interim Confidentiality Order, to be disclosed to three Amgen in-house attorneys, Jonathan Graham, Kimberly Dunne, and William Diaz, and two Horizon in-house

---

[1] Defendants stipulated to the entry of the Interim Confidentiality Order so that their outside counsel could receive the FTC's investigative file as promptly as possible at the start of this proceeding. With discovery underway, it is now imperative, for the reasons explained herein, that the Interim Confidentiality Order be modified on a limited basis solely to allow the attorneys at Amgen and Horizon who have primary responsibility for the litigation of this case to have access to the evidence.

attorneys, Sean Clayton and Nelson Alexander, subject to certain restrictions.[2][3] In particular, Amgen and Horizon respectfully request that the Court modify the Interim Confidentiality Order to provide:

> Notwithstanding the limitations imposed in Paragraph 7, Confidential Material may be disclosed to Jonathan Graham, Kimberly Dunne and William Diaz ("Amgen In-House Counsel"), and Sean Clayton and Nelson Alexander ("Horizon In-House Counsel"), except Amgen In-House Counsel and Horizon In-House Counsel shall not have access to documents that have been or will be (i) produced by any entity whose employees do not appear on the FTC's witness list and (ii) marked confidential by such entity pursuant to Paragraph 6. Documents or transcripts containing Confidential Material may be shared with Amgen In-House Counsel and Horizon In-House Counsel only through a secure portal that prevents Amgen In-House Counsel and Horizon In-House Counsel from downloading or sharing Confidential Material.[4]

Plaintiffs oppose this motion. In order to facilitate an expedited ruling on this motion, the parties have agreed on the schedule set forth in the statement being filed separately in accordance with the Court's standard practice.

## I. BACKGROUND

Mr. Graham is Amgen's Executive Vice President, General Counsel, and Secretary. (Ex. B (Decl. of Jonathan Graham) ¶ 2.) Ms. Dunne is a Vice President in Amgen's legal department and the head of the Corporate Litigation Group. (Ex. C (Decl. of Kimberly Dunne) ¶¶ 2, 4.) Mr.

---

[2] Defendants have included a comparison document between the Interim Confidentiality Order and the proposed modification as Ex. A filed herewith.

[3] Exhibits A-D referenced herein are appended to the Declaration of Jesse M. Weiss in Support of Defendants Amgen Inc. and Horizon Therapeutics plc's Joint Motion to Modify the Interim Confidentiality Order, which is submitted herewith. Exhibits E-F referenced herein are appended to the Declaration of David Burns in Support of Defendants Amgen Inc. and Horizon Therapeutics plc's Joint Motion to Modify the Interim Confidentiality Order, which is submitted herewith.

[4] With the exception of witnesses "who may have authored or received the information in question," Paragraph 7 of the Interim Confidentiality Order does not permit review by any of Defendants' employees. The modification sought herein is consistent with the Model Confidentiality Order incorporated in the Court's Standing Order on confidentiality (Form LR 26.2), which provides that confidential information may be reviewed by employees of a party "to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed."

Diaz is a Senior Counsel in the Corporate Litigation Group and serves as Amgen's in-house antitrust counsel. (Ex. D (Decl. of William Diaz) ¶ 2.) Mr. Clayton is Horizon's Executive Vice President, and General Counsel. (Ex. E (Decl. of Sean Clayton) ¶ 2.) Mr. Alexander is a Senior Vice President in Horizon's legal department and serves as Horizon's in-house counsel. (Ex. F (Decl. of Nelson Alexander) ¶ 2.) Mr. Graham, Ms. Dunne and Mr. Diaz for Amgen, and Mr. Clayton and Mr. Alexander for Horizon, all have primary responsibility for the day-to-day support, management, and oversight of this action; and each is willing to become counsel of record in this case. (Ex. B (Graham Decl.) ¶ 5; Ex. C (Dunne Decl.) ¶ 5; Ex. D (Diaz Decl.) ¶ 5; Ex. E (Clayton Decl.) ¶ 5; Ex. F (Alexander Decl.) ¶ 5.) Mr. Graham, Ms. Dunne, Mr. Diaz, Mr. Clayton and Mr. Alexander are not involved in any activities that could be considered competitive decision-making. (Ex. B (Graham Decl.) ¶ 6; Ex. C (Dunne Decl.) ¶ 6; Ex. D (Diaz Decl.) ¶ 6.; Ex. E (Clayton Decl.) ¶ 6; Ex. F (Alexander Decl.) ¶ 6.) They are not involved in pricing or access negotiations, competitor or pricing analyses, research, development, marketing, financing, or obtaining regulatory approval for, or seeking reimbursement for any of Amgen's or Horizon's products. (Ex. B (Graham Decl.) ¶¶ 7–8; Ex. C (Dunne Decl.) ¶¶ 7–8; Ex. D (Diaz Decl.) ¶¶ 7–8; Ex. E (Clayton Decl.) ¶¶ 7–8; Ex. F (Alexander Decl.) ¶¶ 7–8.) All five have been bound by numerous protective orders or involved in litigation necessitating protective orders and have never been accused of violating those orders. (Ex. B (Graham Decl.) ¶ 9; Ex. C (Dunne Decl.) ¶ 9; Ex. D (Diaz Decl.) ¶ 9; Ex. E (Clayton Decl.) ¶ 9; Ex. F (Alexander Decl.) ¶ 9.) In the event that this motion is granted, all five have sworn in their respective accompanying declarations they will not share any Confidential Material obtained or viewed in relation to the *FTC v. Amgen* trial with anyone not authorized under the Interim Confidentiality Order to receive Confidential Material, including other Amgen and Horizon employees,

including (but not limited to) those who are involved in competitive decision-making for any product. (Ex. B (Graham Decl.) ¶ 10; Ex. C (Dunne Decl.) ¶ 10; Ex. D (Diaz Decl.) ¶ 10; Ex. E (Clayton Decl.) ¶ 10; Ex. F (Alexander Decl.) ¶ 10.)

The *FTC v. Amgen* trial is of utmost importance to Amgen and Horizon, as this trial will decide the fate of an important merger for the companies and their strategy going forward. Yet, absent a modification of the Interim Confidentiality Order, no one at Amgen or Horizon will have access to a significant portion of the evidence developed in this proceeding, much of which will be important to understand and develop an effective defense against Plaintiffs' claims. Confidential Material is broadly defined in the Interim Confidentiality Order to encompass documents, electronically stored information, and deposition transcripts that may contain, *inter alia*, "Competitively Sensitive Information," which "shall refer to, but shall not be limited to, any trade secret or competitively sensitive research, analysis, technical, financial, development, or commercial information that has not been released into the public domain." (Interim Confidentiality Order ¶ 1.) This will likely encompass a vast swath of the third-party evidence produced in this case. Amgen's and Horizon's lack of access to this material, particularly by witnesses on the FTC's witness list, prejudices Amgen's and Horizon's ability to prepare their defense, as Amgen's and Horizon's respective in-house counsel—who are the most familiar with Amgen's and Horizon's organizational structure and operations—are better positioned than outside counsel to understand which Amgen and Horizon employees, documents, and data are available to rebut the evidence lodged against Amgen and Horizon.

## II. ARGUMENT

This Court should modify the Interim Confidentiality Order to allow Mr. Graham, Ms. Dunne, Mr. Diaz, Mr. Clayton and Mr. Alexander to access Confidential Material, subject to certain restrictions.

There is no doubt that the Court can modify the Interim Confidentiality Order. "[A] protective order is always subject to modification." *In re Se. Milk Antitrust Litig.*, MDL No. 1899, 2009 WL 3713119, at *1 (E.D. Tenn. Nov. 3, 2009); *see, e.g.*, *In re Schering-Plough Corp.*, No. 9297, 2001 WL 1478371, at *1, *3 (F.T.C. June 20, 2001) (reaching the merits of Complaint Counsel's motion to amend). "Access to confidential information may not be denied solely because of an attorney's status as in-house counsel." *Schering-Plough Corp.*, 2001 WL 1478371, at * 1 (internal quotation marks omitted) (citations omitted). "Rather, the decision turns largely on the specific role of in-house counsel within the business." *Id.* (internal quotation marks omitted) (citations omitted). An in-house attorney who is not involved in any competitive decision-making should be allowed to access confidential material. *Kraft Foods Global, Inc. v. Dairilean, Inc.*, No. 10 C 8006, 2011 WL 1557881, at *5 (N.D. Ill. Apr. 25, 2011) (accepting a modification to a protective order to allow in-house counsel to review highly confidential information).[5]

---

[5] *See also MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19-cv-1865-GPC (DEB), 2021 WL 389820, at *4 (S.D. Cal. Feb. 4, 2021) (holding that certain in-house counsel may access any of the discovery generated in the case "[b]ecause they are not competitive decisionmakers, and because they have safeguards in place to protect against further disclosure of Plaintiffs' trade secrets and source codes"); *In re Plastics Additives Antitrust Litig.*, Civil Action No. 03-2038, 2005 WL 8179861, at *2 (E.D. Pa. Aug. 24, 2005) (granting defendants' motion to modify a protective order in antitrust litigation to "permit the automatic dissemination of highly confidential business materials to in-house counsel, as well as their legal assistants, who: (i) are engaged only in provided legal advice to their employer; and (ii) do not take part in decisions of a business or competitive nature relating to the pricing, marketing, or other business strategies of their employer with regard to plastics additives"); *Razor USA LLC v. DGL Grp., Ltd.*, Civil Action No. 19-12939, 2020 WL 3604081, at *1, *3 (D.N.J. July 2, 2020) (finding a party's sole in-house counsel did not participate in "competitive decision-making" and could access "highly confidential, attorneys' eyes only" information); *Sanofi-Aventis U.S. LLC v. Breckenridge Pharm., Inc.*, Civil Action Nos. 15-289 (MAS)(LHG), 15-1836 (MAS)(LHG), 2016 WL 308795, at *4–5 (D.N.J. Jan. 25, 2016) (holding in-house counsel who was not a competitive decisionmaker could view "outside counsel eyes only" information; although the in-house counsel negotiated settlement agreements, he did not engage in pricing, product design, patent prosecution, or product decisions, and he maintained separate computing and storage facilities from other counsel); *United States v. Sungard Data Sys., Inc.*, 173 F. Supp. 2d 20, 21, 24 (D.D.C. 2001) (rejecting DOJ's and intervenors' requests that access to confidential documents be limited to outside counsel in a Clayton Act suit, explaining that the in-house counsel "do not participate as managers or decision makers in the competitive decisions made by the actual managers of their employers" and noting that "[t]o deny outside counsel access to the lawyers most familiar with their clients' business and the industry in which they compete and who will have a much deeper and complete understanding of the documents being produced and of the expert testimony to be derived from it is to make [defendants] fight with one hand behind their backs").

Under *Schering-Plough*, the scope of "competitive decision-making" in the antitrust context is narrow. The in-house counsel in *Schering-Plough* did advise on legal issues relating to patent infringement and oversee new product development and management of a research and development group, but "only to the extent of assuring compliance with relevant rules and regulations." 2001 WL 1478371, at *2. Despite the concerns that the plaintiff raised in *Schering-Plough* about the respondent's in-house counsel, the Court concluded that the in-house counsel had "established that he does not participate in the type of competitive decision making that would involve counsel's advice and participation in any or all of [the respondent's] decisions made in light of similar or corresponding information about a competitor." *Id*. at *3.

The same is true here: Mr. Graham, Ms. Dunne, Mr. Diaz, Mr. Clayton and Mr. Alexander do not participate in competitive decision-making. They are not involved in pricing or access negotiations, competitor or pricing analyses, research, development, marketing, financing, or obtaining regulatory approval for, or seeking reimbursement for any of Amgen's or Horizon's products. (Ex. B (Graham Decl.) ¶¶ 7–8; Ex. C (Dunne Decl.) ¶¶ 7–8; Ex. D (Diaz Decl.) ¶¶ 7–8; Ex. E (Clayton Decl.) ¶¶ 7–8; Ex. F (Alexander Decl.) ¶¶ 7–8.) This alone provides a sufficient basis for allowing them access to confidential information. *See, e.g.*, *Schering-Plough*, 2001 WL 1478371, at *2–3; *F.T.C. v. Whole Foods Market, Inc.*, Civil Action No. 07-1021 (PLF), 2007 WL 2059741, at *2–3 (D.D.C. July 6, 2007).

Moreover, Defendants have proposed reasonable restrictions on Mr. Graham's, Ms. Dunne's, Mr. Diaz's, Mr. Clayton's and Mr. Alexander's access to Confidential Material. The proposed modification to the Interim Confidentiality Order would allow each to access or view competitively sensitive documents only through a secure portal that prevents downloading or sharing. In addition, as noted, each of Mr. Graham, Ms. Dunne, Mr. Diaz, Mr. Clayton and Mr.

Alexander have been involved in many matters necessitating protective orders in their history as attorneys and have never been accused of violating their terms, which of course, prohibit sharing confidential information with individuals who are not eligible to see confidential documents. (Ex. B (Graham Decl.) ¶ 9; Ex. C (Dunne Decl.) ¶ 9; Ex. D (Diaz Decl.) ¶ 9, Ex. E (Clayton Decl.) ¶ 9; Ex. F (Alexander Decl.) ¶ 9)

### III. CONCLUSION

For the reasons stated above, Defendants respectfully request that the Interim Confidentiality Order be modified to allow Mr. Graham, Ms. Dunne, Mr. Diaz, Mr. Clayton and Mr. Alexander to access certain Confidential Material, subject to restrictions.

June 30, 2023

Respectfully submitted,

/s/ David R. Marriott

David R. Marriott
dmarriott@cravath.com
Timothy G. Cameron (*admitted pro hac vice*)
tcameron@cravath.com
Daniel K. Zach (*admitted pro hac vice*)
dzach@cravath.com
Jesse M. Weiss (*admitted pro hac vice*)
jweiss@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

Renata B. Hesse (*admitted pro hac vice*)
hesser@sullcrom.com
Samantha F. Hynes (*admitted pro hac vice*)
hyness@sullcrom.com
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Washington, DC 20006
Telephone: (202) 956-7575

/s/ Ethan Glass

Ethan Glass
eglass@cooley.com
Jacqueline Grise (*admitted pro hac vice*)
jgrise@cooley.com
David Burns (*admitted pro hac vice*)
dburns@cooley.com
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

Matthew L. Kutcher (Bar No. 6275320)
mkutcher@cooley.com
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598

*Attorneys for Defendant Horizon Therapeutics plc*

James R. Figliulo
jfigliulo@sgrlaw.com
Dylan Smith
dylansmith@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLP
10 S. LaSalle, Suite 3600
Chicago, IL 60603
Telephone:  (312) 360-6000
Facsimile:  (312) 360-6520

*Attorneys for Defendant Amgen Inc.*