UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>STATE OF CALIFORNIA<br><br>STATE OF ILLINOIS<br><br>STATE OF MINNESOTA<br><br>STATE OF NEW YORK<br><br>STATE OF WASHINGTON<br><br>and<br><br>STATE OF WISCONSIN,<br><br>            *Plaintiffs*,<br><br>        v.<br><br>AMGEN INC.<br><br>and<br><br>HORIZON THERAPEUTICS PLC,<br><br>            *Defendants*. | C.A. No. 1:23-cv-03053 |

**PLAINTIFF FEDERAL TRADE COMMISSION'S
<u>MOTION TO STRIKE CERTAIN OF DEFENDANTS' AFFIRMATIVE DEFENSES</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD................................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

    I.    DEFENDANTS' AFFIRMATIVE DEFENSES DO NOT STATE VALID DEFENSES UNDER *TWOMBLY* AND *IQBAL*. ................................................................................ 5

        A. DEFENDANTS' SELECTIVE ENFORCEMENT DEFENSE FAILS TO MEET THRESHOLD PLEADING REQUIREMENTS. ........................................................ 6

        B. DEFENDANTS' CONSTITUTIONAL DEFENSES DO NOT SATISFY THE *TWOMBLY/IQBAL* PLEADING STANDARD. ........................................................ 9

    II.    DEFENDANTS' AFFIRMATIVE DEFENSES ARE IMMATERIAL UNDER THE APPLICABLE SECTION 13(b) STANDARD. ............................................................. 10

    III.    DEFENDANTS' AFFIRMATIVE DEFENSES ARE CUMULATIVE OF DEFENDANTS' COUNTERCLAIMS. ........................................................................ 13

CONCLUSION ........................................................................................................................... 15

## INTRODUCTION

Plaintiff Federal Trade Commission ("FTC") respectfully moves to strike Defendants' seventh and thirteenth affirmative defenses, which respectively raise a selective enforcement defense and a number of constitutional challenges to the FTC's structure and authority.

Defendants' selective enforcement and constitutional affirmative defenses should be stricken for three distinct but related reasons. *First*, Defendants' selective enforcement and at least one of Defendants' constitutional defenses do not meet the *Twombly/Iqbal* pleading standard because they do not contain sufficient factual matter to support a plausible claim for relief or they fail to state a claim upon which relief can be granted. *Second*, these affirmative defenses are irrelevant to the Court's preliminary injunction analysis under Section 13(b) of the FTC Act. The question before the Court under the Section 13(b) standard is whether Plaintiffs have "raised substantial doubts" that "the effect of the acquisition may be to lessen competition, or tend to create a monopoly." Defendants' affirmative defenses have no bearing on that issue. *Third*, all but one of Defendants' constitutional affirmative defenses are cumulative of Defendants' counterclaims, which are already on a separate litigation track and should proceed separately from Plaintiffs' preliminary injunction motion.

Defendants' selective enforcement defense is inadequately pled, and Defendants fall far short of the exacting pleading standard required to even obtain related discovery. Merging parties raised similar claims in two recent merger challenges, and in both cases the courts disposed of such arguments with little fanfare. *See United States v. AT&T Inc.*, 290 F. Supp. 3d 1, 4 (D.D.C. 2018); *FTC v. Meta Platforms*, No. 5:22-CV-04325-EJD, 2022 WL 16637996, at *8 (N.D. Cal. Nov. 2, 2022). Indeed, the FTC is aware of no case in which a district court denied a government merger challenge on selective enforcement grounds. Like in *Meta* and *AT&T*, Defendants' selective enforcement claim is deficient and should be discarded.

1

Defendants' constitutional affirmative defenses are also meritless, and importantly need not be addressed until after the preliminary injunction hearing. Moreover, these defenses include claims that, if well-founded, would essentially abolish the FTC's administrative processes—if not the agency in its entirety—and thus halt the agency's efforts to enforce American competition law. Defendants' attack on the agency would also handcuff the FTC's consumer protection efforts, which protect consumers from scammers, false advertising, and data breaches. These fundamental and weighty constitutional claims should be evaluated following robust, focused briefing and argument on Defendants' redundant and nearly coextensive counterclaims.

Defendants oppose this motion. Plaintiff and Defendants have agreed on the schedule set forth in the statement being filed separately in accordance with the Court's standard practice.

## BACKGROUND

The FTC filed a Complaint for a Preliminary Injunction seeking to preserve the status quo during the pendency of the FTC's administrative hearing, by enjoining Defendant Amgen Inc. ("Amgen") from consummating its proposed acquisition (the "Proposed Merger") of Defendant Horizon Therapeutics plc ("Horizon") (collectively, "Defendants"). Defendants' Answer asserts thirteen affirmative defenses. Answer, ECF No. 77 ("Answer"). While all of the affirmative defenses lack merit, the FTC moves to strike Defendants' affirmative defenses seven (selective enforcement) and thirteen (constitutional challenges) on the grounds that they do not meet the Seventh Circuit's threshold pleading requirements. These defenses state:

*Affirmative Defense 7:* Plaintiffs' claim reflects improper, selective enforcement of the antitrust laws;

*Affirmative Defense 13:* Plaintiffs seek relief in support of an administration process that runs afoul of the U.S. Constitution  The process:

> (a) violates Article I f the Constitution, which provides that "[a]ll legislative Powers herein granted shall be vested in Congress of the United States," U.S. Const. art I,

2

§ 1, in that (i)Congress delegated to the FTC the power to decide whether to bring antitrust enforcement actions in administrative proceedings rather than in an Article III Court, and (ii) Congress did not provide the FTC with an intelligible principle by which to exercise that power, giving it a total, unguided discretion to decide whether to bring an antitrust enforcement action in an administrative proceeding rather than in an Article III Court;

(b) violates Article II of the Constitution and its separation of powers principles because (i) the FTC's Commissioners and Administrative Law Judges can only be removed for cause, (ii) the FTC bears no resemblance to the "quasi-legislative or quasi-judicial" body whose for-cause removal provisions were upheld in no-inapposite Supreme Court precedent, (iii) rather, the FTC today operates primarily as an enforcement agency (*e.g.*, by regularly bringing suit in administrative proceedings and federal court for injunctive and monetary relief, including relief to stop the consummation of transactions that could improve the lives of numerous patients in the United States and globally) . . . and therefore (iv) the for-cause removal restriction impermissibly restricts the President's removal powers;

(c) violates Article III of the Constitution by adjudicating private rights before a non-Article III body without meaningful review of the FTC's factual findings by an Article III court [internal citations omitted];

(d) violates Defendants' right to Due Process under the Fifth Amendment by depriving Defendants of their right to adjudication before a neutral arbiter---specifically, the combining investigative, prosecutorial and adjudicative functions violates due process where 'the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable' as is the case here, considering the FTC Commissioners vote out the complaint, direct its prosecution and pass judgment on its merits, relying on evidence that would not be admissible in an Article III court, and in a proceeding where the FTC reportedly has not lost in 25 years. . . [internal citations omitted];

(e) violates Defendants' rights to Equal Protection under the Fifth Amendment, in that the FTC and the Department of Justice ("DOJ") arbitrarily decide between them which agency will review a transaction through a black box "clearance" process, and as a result of that arbitrary decision, the Transaction was reviewed by the FTC, which has the ability to judge its merits through an in-house proceeding that lacks the protections of an Article III court (such as the ability to rely on evidence not admissible under the Federal Rules of Evidence, and where the same decision-makers initiate, prosecute and decide the merits of the case), whereas if the DOJ reviewed the Transaction and decided to challenge it, such challenge could *only* by brought in an Article III court for final adjudication of the merits of the challenge; and

(f) violates Defendants' right to a jury trial under the Seventh Amendment, in that the FTC review process includes no right for a regulated defendant to receive a trial

3

>by jury, while the Seventh Amendment applies whenever a defendant's private rights are at issue, which are historically understood to include property rights, and where the FTC seeks to directly regulate Defendants' rights to use their property including Defendants' ability to engage in a private commercial transaction and the possibility of future civil penalties [citations omitted].

Answer at 35-36.

Affirmative defense thirteen, with the exception of subpart (c), is repeated in Defendants' counterclaims.[1] Those counterclaims were not properly served until July 18, 2023, when they were received by the United States Department of Justice, which represents the FTC in its capacity as a counterclaim defendant in this matter. *See* 15 U.S.C. § 56(a); Certificate of Service at 4, ECF No. 97 (identifying the Certified Mail tracking number); Exhibit 1 (confirming that Defendants' Counterclaims were delivered on July 18); *see also, e.g.*, *Fox v. United States Postal Serv.*, No. 19-1450, 2019 WL 8619622, at *3 (6th Cir. Oct. 30, 2019) (explaining that the United States Postal Service had sixty days to respond after the United States Attorney received plaintiff's pleadings). As a result, the FTC's responsive pleading to Defendants' counterclaims will not be due until September 18, 2023, Fed. R. Civ. P. 6(a)(1)(C), 12(a)(2), one week after the Court's scheduled preliminary injunction hearing is set to begin, ECF No. 50.

## LEGAL STANDARD

Rule 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[A]n affirmative defense must satisfy a three-part test to survive a motion to strike under Rule 12(f): '(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded

---

[1] Affirmative defense 13(a) is repeated in Defendants' Count I; affirmative defense 13(b) is repeated in Defendants' Count II; affirmative defense 13(d) is repeated in Defendants' Count III; affirmative defense 13(e) is repeated in Defendants' Count IV; and affirmative defense 13(f) is repeated in Defendants' Count V. *See* Answer at 35-36, 43-55.

4

under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge.'" *Sarkis' Cafe, Inc. v. Sarks in the Park*, LLC, 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014) (quoting *Renalds v. S.R.G. Rest. Grp.*, 119 F. Supp. 2d 800, 802-03 (N.D. Ill. 2000)). An affirmative defense survives a Rule 12(b)(6) challenge if it "contain[s] sufficient factual allegations that state a defense that is plausible on its face" and satisfies the standard set by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). *Sippey ex rel. Roger B. v. Cooper Technica, Inc.*, No. 18-CV-06744, 2019 WL 1953110, at *1 (N.D. Ill. May 2, 2019); *Sterling Design & Constr., LLC v. Sage Design & Constr., LLC*, No. 20-CV-05549, 2022 WL 797050, at *6 (N.D. Ill. Mar. 16, 2022) (explaining that "judges in this District have endorsed the majority view (of other circuits) that the *Twombly/Iqbal* standard governs" pleading affirmative defenses).

## ARGUMENT

Defendants' affirmative defenses seven and thirteen should be stricken for at least three reasons. First, several fail to state a claim under *Twombly* and *Iqbal*. Second, both affirmative defenses are categorically immaterial to the Court's inquiry under Section 13(b). And third, nearly every constitutional affirmative defense is coextensive with Defendants' counterclaims, which should be addressed after the preliminary injunction hearing and with the benefit of separate, comprehensive briefing.

**I. DEFENDANTS' AFFIRMATIVE DEFENSES ARE INVALID UNDER *TWOMBLY* AND *IQBAL*.**

Defendants' affirmative defenses must "provide sufficient notice of the defense asserted" and may not "assert[ ] boilerplate defenses as mere placeholders without any apparent factual basis." *Sterling*, 2022 WL 797050, at *6 (citation omitted). Although courts in this district disagree whether *Twombly* and *Iqbal*'s pleading standard applies to affirmative defenses, "the majority

5

view" is "that an affirmative defense must contain 'sufficient factual matter to be plausible on its face.'" *Behn v. Kiewit Infrastructure Co.*, No. 17 C 5241, 2018 WL 5776293, at *1 (N.D. Ill. Nov. 2, 2018) (quoting *Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 386 (N.D. Ill. 2015)); *see also Sterling*, 2022 WL 797050, at *6. Here, Defendants' selective enforcement defense, and at least one of Defendants' constitutional affirmative defenses, fail to meet this standard.

### A. DEFENDANTS' SELECTIVE ENFORCEMENT DEFENSE FAILS TO MEET THRESHOLD PLEADING REQUIREMENTS.

Defendants' seventh affirmative defense is a cursory one-line allegation that "Plaintiffs' claim reflects improper, selective enforcement of the antitrust laws." Answer at 34. This barebones legal conclusion is nothing more than a "boilerplate defense[] . . . without any apparent factual basis," leaving the basis of Defendants' selective enforcement defense "completely unknown." *Dorsey v. Ghosh*, No. 13-CV-05747, 2015 WL 3524911, at *4-5 (N.D. Ill. June 3, 2015). Defendants' pleading fails to put the FTC on notice of the underlying factual bases for this defense and should therefore be stricken. *See, e.g.*, *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1295 (7th Cir. 1989) (affirming order striking affirmative defenses based on "bare bones conclusory allegations").

Defendants' selective enforcement defense also fails to meet the requisite "rigorous standard." *See United States v. Armstrong*, 517 U.S. 456, 468 (1996). Namely, Defendants fail to allege that they have been singled out for prosecution and that other similarly situated persons have not been prosecuted. *See AT&T Inc.*, 290 F. Supp. 3d at 4 ("[D]efendants are 'similarly situated' for purposes of a selective enforcement claim 'when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them.'"); *see also Meta Platforms*, 2022 WL 16637996, at *8 (striking selective enforcement defense where defendants did "not allege *any* underlying factual basis"). Courts

6

assessing selective enforcement defenses in the context of a merger challenge have applied the long line of cases relating to selective "prosecution" defenses. *See AT&T Inc.*, 290 F. Supp. 3d at 1; *Meta Platforms*, 2022 WL 16637996, at *8.

A selective prosecution defense is an "assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. A defendant must show that the prosecution "had a discriminatory effect" and "was motivated by a discriminatory purpose," and must "produce some evidence that similarly situated defendants . . . could have been prosecuted, but were not." *Id.* at 465-69 (citation omitted); *see also United States v. Hayes*, 236 F.3d 891, 895 (7th Cir. 2001). In general, "courts are 'properly hesitant to examine the decision whether to prosecute.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

"[T]he standard is a demanding one," and courts addressing selective prosecution "afford a 'background presumption,' that the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* at 463-64 (internal citations omitted); *see also id.* at 468 (describing "a correspondingly rigorous standard for discovery in aid of such a claim"). Discovery relating to selective prosecution "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy." *Id.* Thus, the *Armstrong* Court confirmed that even before discovery may be permitted, courts "'require some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory intent." *Id.* (citation omitted).

The D.C. District Court's decision in *AT&T Inc.* is instructive. 290 F. Supp. 3d 1. There, defendants asserted a selective enforcement defense, claiming that the government's challenge to their merger was based on political speech disfavored by President Trump rather than "credible

7

antitrust concerns," and sought discovery related to that defense. *Id.* at 2-3. Applying *Armstrong*'s "rigorous standard," the court held that "defendants ha[d] not made a 'credible showing' that they ha[d] been 'especially singled out' by plaintiff" for enforcement, and therefore were not entitled to discovery related to their selective enforcement defense. *Id.* at 5. Defendants here have not even attempted a credible assertion of discriminatory effect or intent, and therefore do not even approach the "rigorous" *Armstrong* standard.

The court in *AT&T* further explained that it is "difficult to even conceptualize" how a selective enforcement defense like Defendants' would apply in an antitrust context. *Id.* at 4. This defense requires a showing that a "similarly situated" person was not prosecuted; that is, Defendants must show that "their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Id.* The Court described how unsuited the selective enforcement inquiry may be in the context of a merger challenge, "where each merger 'must be functionally viewed' in 'the context of its particular industry' and in light of a 'variety of factors'—including the transaction's size, structure, and potential to generate efficiencies or enable evasion of rate regulation—that 'are relevant in determining whether a transaction is likely to lessen competition.'" *Id.* (quoting *United States v. Baker Hughes Inc.*, 908 F.2d 981, 985 (D.C. Cir. 1990)); *see also Meta Platforms*, 2022 WL 16637996, at *8 n.5 ("echo[ing]" this observation). Other courts have similarly "rejected th[is] type of 'why me' defense" in the context of FTC enforcement, noting that "[t]he FTC 'alone is empowered to develop [an] enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically." *FTC v. Chemence, Inc.*, 209 F. Supp. 3d 981, 985 (N.D. Ohio 2016)

(holding that access to competitors' confidential information was not relevant to defendant's defense of claims that it had violated the FTC Act).

Defendants' "selective enforcement" defense is nothing more than a conclusory statement. It contains no factual allegations and falls far short of the requisite standard. Accordingly, the Court should strike Defendants' seventh affirmative defense.

### B. DEFENDANTS' CONSTITUTIONAL DEFENSES DO NOT SATISFY THE *TWOMBLY/IQBAL* PLEADING STANDARD.

Affirmative defense 13.c also fails to satisfy the *Twombly/Iqbal* pleading standard because it does "not provide fair notice as to the bas[i]s for th[is] defense[] and, therefore, [is] insufficient even under the most liberal of pleading standards." *Meta Platforms*, 2022 WL 16637996, at *7. "[D]istrict courts have considerable discretion under Rule 12(f) to strike claimed defenses that do not give fair notice." *Riemer v. Chase Bank U.S., N.A.*, 274 F.R.D. 637, 639-41 (N.D. Ill. 2011) (striking inadequately pled affirmative defenses).

Affirmative Defense 13.c states only that the FTC's administrative process "violates Article III of the Constitution by adjudicating private rights before a non-Article III body without meaningful review of the FTC's factual findings by an Article III court." Answer at 35. "Bare legal conclusions are never sufficient" to plead an affirmative defense, *Riemer*, 274 F.R.D. at 639, but Defendants offer nothing to support their claim that the Commission is "adjudicating private rights." Defendants offer no explanation of how or why a "private right" is at stake in this matter, and do not explain why the judicial review mechanism that has been in place for a century is suddenly no longer "meaningful." Answer at 35; *see Crowell v. Benson*, 285 U.S. 22, 51 (1932) (describing a "private right" as "the liability of one person to another").

The barebones allegations underpinning this affirmative defense do not provide sufficient facts and explanation to provide the FTC notice of Defendants' legal contentions. *See, e.g.*, *United*

9

*States v. 416.18 Acres of Land*, 514 F. 2d 627, 631 (7th Cir. 1975) ("[A] Rule 12(f) motion admits only facts well pleaded, and mere conclusions of law not warranted by the asserted facts have no efficacy.") (internal quotation marks and citation omitted); *Heller*, 883 F.2d at 1295 (affirming district court order striking affirmative defenses because the defendant "omitted any short and plain statement of facts and failed totally to allege the necessary elements of the alleged claims"); *Sterling*, 2022 WL 797050, at *6 (granting in part motion to strike affirmative defenses where the stricken "affirmative defenses contain no supporting facts that would put Plaintiffs on notice of the defenses asserted") (cleaned up). Further, any claim that Article III of the Constitution categorically forbids the administrative adjudication of a private right is simply wrong. *See e.g.*, *Reconstruction Fin. Corp. v. Bankers Tr. Co.*, 318 U.S. 163, 168-170 (1943) (rejecting the argument that "matters of private right may not be relegated to administrative bodies for trial" and relying on the availability of judicial review to ensure that agency factual findings are "supported by evidence").

Defendants' other constitutional affirmative defenses likewise appear facially invalid. Nonetheless, these defenses will be most efficiently addressed alongside Defendants' coextensive counterclaims. As described more fully in Section III below, the FTC's responsive pleading to Defendants' counterclaims is not due until midway through the Court's preliminary injunction hearing, and therefore affirmative defenses that are coextensive with Defendants' counterclaims do not warrant consideration at this stage.

## II. DEFENDANTS' AFFIRMATIVE DEFENSES ARE IMMATERIAL UNDER THE APPLICABLE SECTION 13(b) STANDARD.

Under Rule 12(f), the "court may strike from a pleading" a defense if it is "immaterial," in the sense that it is "neither responsive nor relevant to the issues involved in the action." *Smith v. St. James Hosp. & Health Ctrs.*, No. 02 C 2953, 2003 WL 174195, at *2 (N.D. Ill. Jan. 27, 2003)

(granting motion to strike). Just as the district court concluded in *Meta Platforms*, 2022 WL 16637996, here, Defendants' seventh and thirteenth affirmative defenses are not relevant to the analysis this Court must undertake under section 13(b) of the FTC Act. For this independent reason, the Court should strike those defenses.

Plaintiffs filed this case seeking to "enjoin Defendants from completing the Proposed Merger pending administrative adjudication of that complaint" under section 13(b) of the FTC Act. Mem. Supp. Mot. Prelim. Inj., ECF No. 106 at 2. Section 13(b) of the FTC Act allows the FTC to seek to preserve the status quo—the competitive state prior to any proposed transaction—pending administrative adjudication regarding the transaction. 15 U.S.C. § 53(b); *FTC v. OSF Healthcare Sys.*, 852 F. Supp.2d 1069, 1073 (N.D. Ill. 2012). When the FTC seeks a preliminary injunction under the FTC Act, the question before the Court is a narrow one. The FTC need not present "detailed evidence of anticompetitive effect at this preliminary phase"; it need only raise "substantial doubts" about the competitive effects of the transaction. *FTC v. Advoc. Health Care*, No. 15 11473, 2017 WL 1022015, at *2 (N.D. Ill Mar. 16, 2017). "It is important to bear in mind that, when ruling on a request for a preliminary injunction pursuant to § 13(b), the district court is not authorized to determine whether the antitrust laws have been or are about to be violated," because "[t]hat adjudicatory function is vested in FTC in the first instance." *OSF Healthcare Sys.*, 852 F. Supp. 2d at 1073 (quoting *FTC v. Food Town Stores, Inc.*, 539 F.2s 1339, 1342 (4th Cir. 1976) (cleaned up)).

Courts engage in a two-part analysis when adjudicating preliminary injunction motions under Section 13(b). At the first step, the court must determine whether the FTC has "raised substantial doubts" that "the effect of [the acquisition] may be to lessen competition, or tend to create a monopoly." *Advoc. Health Care*, 2017 WL 1022015, at *2; *FTC v. Elders Grain, Inc.*,

11

868 F.2d 901, 902 (7th Cir. 1989) ("Section 7 forbids corporate acquisitions that may lessen competition substantially or tend to create a monopoly."); 15 U.S.C. § 18. This inquiry focuses on the *antitrust* merits of the transaction and the likelihood of success before the Commission. *Advoc. Health Care*, 2017 WL 1022015, at *16 (enjoining defendants from consummating their proposed merger pending final disposition of the FTC's full *administrative proceeding on the merits*") (emphasis added); *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 714 (D.C. Cir. 2001) ("To determine likelihood of success on the merits we measure the probability that, *after an administrative hearing on the merits*, the Commission will succeed in proving . . . [a] violation of section 7 of the Clayton Act.") (emphasis added). "In framing the probability of success necessary for a grant of injunctive relief . . . the plaintiff's chances of prevailing need only be better than negligible." *FTC v. Credit Bureau Ctr., LLC*, 235 F. Supp. 3d 1054, 1060 (N.D. Ill. 2017).

Because the mandated inquiry under the Section 13(b) standard is so narrow, Defendants' selective enforcement and constitutional defenses are immaterial to the Court's analysis. A court in the Northern District of California recently struck similar affirmative defenses, reasoning that the likelihood of success on the merits "would be an odd description for issues that can only arise out of the FTC's own proceedings, such as those relating to the FTC's authority, bias, or due process violations." *Meta Platforms*, 2022 WL 16637996, at *6. The *Meta* court noted the lack of authority suggesting that courts may consider alleged "administrative due process violations" when "evaluating the likelihood of FTC success for a Section 13(b) injunction request." *Id.* The court concluded that success on the merits for the purposes of Section 13(b) necessarily referred to success on "the action's Section 7 antitrust merits." *Id.* That logic applies with equal force here.

Defendants' affirmative defenses are also irrelevant to the balancing of the equities. *See id.* at *7 (allegations of unconstitutional bias are "not pertinent" to the "balancing of equities"). When

12

weighing the equities, private considerations must give way to public concerns because "[t]he public has strong interests in the effective enforcement of the antitrust laws and in preserving [the FTC's] ability to order effective relief if it succeeds after a trial on the merits." *Advoc. Health Care*, 2017 WL 1022015, at *16; *FTC v. Rhinechem Corp.*, 459 F. Supp. 785, 791 (N.D. Ill. 1978) ("In light of what it perceives to be the intent of Congress in enacting section 13(b), this court believes that, where, as here, a sufficient showing of a likelihood of success has been made by the FTC, a great weight is to be assigned to both the potential injury to the public stemming from the loss of actual competition between the acquiring and the acquired company pending the ultimate resolution of the fate of the FTC's complaint . . . .").

The public equities thus support expeditiously granting a preliminary injunction should Plaintiffs show that the Proposed Merger is likely to lessen competition. This is especially true since Defendants may still have their day in court on their constitutional counterclaims, as outlined in Part III below. By contrast, if the Court were to deny a preliminary injunction against this merger based on expedited and truncated briefing of the constitutional issues, the harm to the public would be immediate and irreparable, as it would be "difficult to undo" a fully consummated merger, *see Elders Grain*, 868 F.2d at 904, even if the Court later determined after full briefing that the constitutional claims were unfounded.

### III. DEFENDANTS' AFFIRMATIVE DEFENSES ARE CUMULATIVE OF DEFENDANTS' COUNTERCLAIMS.

"[W]here, as here, motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller*, 883 F.2d at 1294. Striking Defendants' constitutional affirmative defenses on the grounds that they are cumulative will streamline the proceedings in this case by allowing the Court (and the parties) to focus on the issues that the Court must decide to rule on Plaintiffs' motion for a preliminary injunction. The Court can then address Defendants'

counterclaims separately, at a later time, once Defendants' numerous constitutional attacks have been fully responded to, briefed, and argued.

All of Defendants' constitutional affirmative defenses at issue in this motion, apart from subpart (c) of Defendants' thirteenth affirmative defense, mirror Defendants' counterclaims making the exact same constitutional allegations. Answer at 34-36 (¶¶ 7, 13), 51-55 (¶¶ 67-102). Those counterclaims are already proceeding on a separate track, given that, under Rule 12(a)(2), the FTC's responsive pleading is not due until 60 days after the United States Attorney has been served. Here, because the United States Attorney was not served until July 18, the FTC's responsive pleading is not due until a week after the preliminary injunction hearing is set to begin.

Even subpart (c) implicates the same public rights doctrine at issue in Defendants' Seventh Amendment Counterclaim, Answer at 50-51, 55. *Cf. Oil States Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1379 (2018) ("[W]hen Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'") (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53-54 (1989)). Accordingly, if not stricken, then subpart (c) would be more appropriately addressed after the preliminary injunction hearing, along with Defendants' other constitutional claims.

Defendants' affirmative defenses include claims that threaten a broad assault on the FTC's enforcement of both American competition and consumer protection laws. Given these sweeping potential implications, Defendants' constitutional claims should not be shoehorned in alongside this expedited discovery schedule and the Court's antitrust analysis. Rather, these issues require thorough, focused briefing and argument.

14

Accordingly, Defendants' constitutional claims, whether styled as affirmative defenses or counterclaims, can most efficiently be litigated after the conclusion of the preliminary injunction proceeding, free from the constraints imposed by Defendants' need for resolution of the antitrust analysis before November 2023. On the other hand, if the Court permits Defendants to litigate these issues as part of the preliminary injunction proceeding, these issues will clutter the hearing and distract from the Court's merger analysis. That course will also force the FTC to dedicate limited agency resources to address broad constitutional issues in the midst of a highly expedited discovery schedule, and it will force the Court to rule on complex constitutional issues on a short timetable. Finally, Defendants' counterclaims may be moot if either Defendants abandon the Proposed Merger or Plaintiffs abandon the enforcement action after this Court's decision on Plaintiffs' motion for a preliminary injunction.

## CONCLUSION

For the reasons above, the FTC respectfully requests that the Court strike Defendants' seventh and thirteenth affirmative defenses.

| | |
|---|---|
| Dated: July 20, 2023 | Respectfully submitted,<br><br>/s/ Nathan Brenner<br>Nathan Brenner (IL Bar 6317564)<br>Stephen A. Mohr<br>Jordan S. Andrew<br>Jessica Weiner<br>Anjelica Sarmiento<br>Andrew Scheperle<br><br>Federal Trade Commission<br>Bureau of Competition<br>600 Pennsylvania Avenue, NW<br>Washington, DC 20580<br>Tel.: 202-326-2314<br>Email: nbrenner@ftc.gov<br><br>*Counsel for Plaintiff Federal Trade Commission*<br><br>Rachel F. Sifuentes<br>Midwest Regional Office<br>Federal Trade Commission<br>230 S. Dearborn St., Room 3030<br>Chicago, IL 60604<br><br>*Local Counsel for Plaintiff Federal Trade Commission* |