**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FEDERAL TRADE COMMISSION,
STATE OF CALIFORNIA,
STATE OF ILLINOIS,
STATE OF MINNESOTA,
STATE OF NEW YORK,
STATE OF WASHINGTON
and
STATE OF WISCONSIN,

       *Plaintiffs*,

   v.

AMGEN INC.
and
HORIZON THERAPEUTICS PLC,

       *Defendants*.

Case No. 1:23-cv-03053

Judge John F. Kness

**DEFENDANTS' MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**
**ON DEFENDANTS' CONSTITUTIONAL COUNTERCLAIMS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ....................................................................................................................... 4

I.  THE FTC'S UNBOUNDED DISCRETION TO BRING ADMINISTRATIVE
    PROCEEDINGS REFLECTS AN UNCONSTITUTIONAL DELEGATION
    OF LEGISLATIVE POWER ................................................................................... 4

II. THE FTC'S SIMULTANEOUS EXERCISE OF INVESTIGATIVE,
    PROSECUTORIAL AND ADJUDICATIVE POWERS VIOLATES DUE
    PROCESS. ................................................................................................................ 9

III. THE FTC'S PROCESS VIOLATES ARTICLE II BECAUSE ITS KEY
     ACTORS (ALJs AND COMMISSIONERS) EXERCISE EXECUTIVE
     POWERS WHILE RESTRICTED FROM PRESIDENTIAL REMOVAL. ......... 12

     A.  FTC ALJs Are Executive Officers Who Must Remain Subject to
         Presidential Removal. ................................................................................ 13

     B.  FTC Commissioners Are Executive Officers Who Must Remain
         Subject to Presidential Removal. .............................................................. 16

IV. THE GOVERNMENT'S ARBITRARY "PROCESS" FOR ASSIGNING
    MERGER ENFORCEMENT DEPRIVES DEFENDANTS OF THEIR RIGHT
    TO EQUAL PROTECTION. ................................................................................. 17

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935)..................................................................................7

*Adler v. Madigan*,
  939 F.2d 476 (7th Cir. 1991) ...................................................................4

*AMG Cap. Mgmt., LLC v. FTC*,
  141 S. Ct. 1341 (2021).............................................................................8

*Axon Enter., Inc. v. FTC*,
  143 S. Ct. 890 (2023)...................................................................1, 6, 10

*Bankers Life & Cas. Co. v. Crenshaw*,
  486 U.S. 71 (1988)..................................................................................17

*Buckley v. Valeo*,
  424 U.S. 1 (1976)....................................................................................13

*Crain v. Bd. of Police Comm'rs*,
  920 F.2d 1402 (8th Cir. 1990) .................................................................4

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005)..................................................................................8

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010).................................................................12, 15, 17

*Freytag v. Comm'r of Internal Rev.*,
  501 U.S. 868 (1991)................................................................................13

*FTC v. H.J. Heinz Co.*,
  246 F.3d 708 (D.C. Cir. 2001) ...............................................................19

*FTC v. Meta Platforms*,
  No. 5:22-cv-04325-EJD, 2023 WL 2346238 (N.D. Cal. Feb. 3, 2023)........................8

*FTC v. Microsoft Corp.*,
  No. 23-CV-02880-JSC, 2023 WL 4443412 (N.D. Cal. July 10, 2023)........................8

*FTC v. Surescripts, LLC*,
  424 F. Supp. 3d 92 (D.D.C. 2020) ...........................................................8

*Gibson v. Berryhill,*
    411 U.S. 564 (1973) ................................................................................9

*Heller v. Doe,*
    509 U.S. 312 (1993) ..............................................................................18

*Hosp. Corp. of Am. v. FTC,*
    807 F.2d 1381 (7th Cir. 1986) .............................................................19

*Humphrey's Ex'r v. United States,*
    295 U.S. 602 (1935) ......................................................................13, 16

*Illumina, Inc., and Grail, Inc. v. FTC,*
    No. 23-60167 (5th Cir.) .........................................................................5

*In re Murchison,*
    349 U.S. 133 (1955) ........................................................................9, 12

*In re Otto Bock HealthCare N. Am., Inc.,*
    2019 WL 5957363 (FTC Nov. 1, 2019) ...............................................14

*INS v. Chadha,*
    462 U.S. 919 (1983) ................................................................................5

*J.W. Hampton, Jr. & Co. v. United States,*
    276 U.S. 394 (1928) ................................................................................5

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ........................................................ passim

*Lucia v. SEC,*
    138 S. Ct. 2044 (2018) ....................................................................13, 14

*Marshall Field & Co. v. Clark,*
    143 U.S. 649 (1892) ................................................................................4

*Mistretta v. United States,*
    488 U.S. 361 (1989) ...........................................................................4, 5

*Myers v. United States,*
    272 U.S. 52 (1926) ........................................................................12, 17

*Romer v. Evans,*
    517 U.S. 620 (1996) ..............................................................................18

*Seila Law LLC v. CFPB,*
    140 S. Ct. 2183 (2020) .............................................................12, 16, 17

*Skinner v. Oklahoma ex rel. Williamson,*
    316 U.S. 535 (1942) ..................................................................18

*St. Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys.,*
    No. 1:12–CV–00560–BLW, 2014 WL 407446 (D. Idaho Jan. 24, 2014), *aff'd,*
    778 F.3d 775 (9th Cir. 2015) ......................................................8

*Tennessee v. Lane,*
    541 U.S. 509 (2004) ..................................................................18

*United States v. Baker Hughes, Inc.,*
    908 F.2d 981 (D.C. Cir. 1990) ....................................................18

*United States v. Gillette Co.,*
    828 F. Supp. 78 (D.D.C. 1993) ..................................................18

*Whitman v. Am. Trucking Ass'n,*
    531 U.S. 457 (2001) ....................................................................9

*Williams v. Pennsylvania,*
    579 U.S. 1 (2016) ..................................................................9, 11

*Withrow v. Larkin,*
    421 U.S. 35 (1975) ......................................................................9

**Statutes & Rules**

5 U.S.C. § 3105 ..............................................................................13

5 U.S.C. § 7521(a) ..........................................................................14

15 U.S.C. § 25 ................................................................................18

15 U.S.C. § 41 ................................................................................14

15 U.S.C. § 45 ..................................................................4, 7, 17, 19

15 U.S.C. § 53(b) ..................................................................4, 7, 19

15 U.S.C. § 56 ......................................................................11, 17

15 U.S.C. § 78u-2 ............................................................................7

15 U.S.C. § 78u-3 ........................................................................6, 7

16 C.F.R. § 2.7(i) ............................................................................19

16 C.F.R. § 3.42 ....................................................................14, 19

16 C.F.R. § 3.54 ...........................................................................................6, 10, 19

17 C.F.R. § 200.14(a)........................................................................................14

17 C.F.R. § 201.111 ..........................................................................................14

Fed. R. Civ. P. 52(a) .........................................................................................18

Fed. R. Civ. P. 56(a) ...........................................................................................4

Local Rule 56.1(a)(2) ..........................................................................................3

**Other Authorities**

16 C.F.R. Parts 0-4 ...........................................................................................14

88 F.R. 1499 (effective January 11, 2023)........................................................17

Daniel A. Crane, *Debunking* Humphrey's Executor, 83 GEO. WASH. L. REV. 1835
    (2015) ...........................................................................................................16

Richard A. Posner, *The Federal Trade Commission*, 37 U. Chi. L. Rev. 47, 53
    (1969) ..................................................................................................10, 11

U.S. Const. amend. V..........................................................................................2

U.S. Const. art. I, § 1 ..........................................................................................4

U.S. Const. art. II, § 1 .......................................................................................12

Defendants Amgen Inc. ("Amgen") and Horizon Therapeutics plc ("Horizon" and, together with Amgen, "Defendants") respectfully submit this memorandum of law in support of their motion for summary judgment on their counterclaims (Counts I through IV) concerning the constitutionality of the FTC's administrative proceeding to block Amgen's acquisition of Horizon (the "Transaction").

**<u>INTRODUCTION</u>**

Two innovative pharmaceutical companies, Amgen and Horizon, propose to combine operations in a transaction that will result in substantial benefits for underserved patients around the world suffering from rare and serious diseases.

The FTC nevertheless seeks to block this Transaction through an administrative process (sometimes referred to as "Part III") hopelessly "tilted" in its own favor. *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 917 (2023) (Gorsuch, J., concurring). It does so in reliance on a speculative hypothesis that ignores real-world facts, modern legal precedent, and Amgen's commitment to abstain from the very conduct the FTC purports to be concerned about. The FTC's strategy is to obtain a preliminary injunction without meaningful judicial scrutiny of its novel allegations, on the promise that the FTC itself will examine the merits of its allegations during its own administrative process. But this Court's role is not so constrained, and Plaintiffs' motion for a preliminary injunction should be denied for a host of antitrust, evidentiary and constitutional reasons.

Given the number and severity of the shortcomings in Plaintiffs' motion, the Court can and should decide Plaintiffs' preliminary injunction motion without reaching the constitutional flaws in Plaintiffs' case. Nevertheless, Defendants' counterclaims identify important constitutional flaws in the FTC's process. Defendants move for

1

summary judgment on four of those counterclaims so that the Court is in a position to timely address these issues should the need arise.[1]

The FTC seeks a preliminary injunction in order to pursue administrative proceedings that are unconstitutional as a matter of law.  Summary judgment should be entered in favor of Defendants for each of the following reasons:

*First*, the FTC's unbounded discretion to initiate proceedings before either an administrative tribunal or federal court violates constitutional limits on delegation of Article I power.

*Second*, the FTC's multiple roles as investigator, prosecutor and judge in this case violate the Due Process Clause of the Fifth Amendment.

*Third*, the for-cause restrictions on removal of the FTC Commissioners who voted to bring the administrative complaint and the FTC administrative law judge ("ALJ") who will hear the case violate Article II.

*Finally*, the process by which responsibility for this matter was assigned to the FTC as opposed to the Department of Justice—an assignment that subjects Defendants to a materially disadvantageous administrative process—lacks a rational basis and thus violates the Equal Protection Clause of the Fifth Amendment.

Accordingly, in the event the Court deems it necessary to reach the constitutional questions, Defendants respectfully submit that summary judgment should be entered against the FTC and in favor of Defendants on Defendants' counterclaims.  If the Court

---

[1] Defendants were not required to assert counterclaims or affirmative defenses for the Court to consider the constitutional flaws in Plaintiffs' motion, but Defendants assert both to leave no question that the issues are properly presented for the Court's consideration should the need arise to address them.

denies Plaintiffs' preliminary injunction motion without addressing the constitutional issues presented (which under the doctrine of constitutional avoidance is the better course), Defendants reserve the right to withdraw their counterclaims.

## **BACKGROUND**

On December 11, 2022, Amgen announced its agreement to acquire Horizon for approximately $27.8 billion. (Dkt. 1 ¶ 27.) On May 16, 2023, the FTC filed a complaint in this Court seeking to enjoin Amgen and Horizon from consummating the Transaction pending resolution of an administrative trial on the FTC's home court. (Dkt. 1 at 2.) Thereafter, on June 22, the FTC instituted the administrative proceeding before its own administrative law judge seeking to block the merger. (Dkt. 77 at 38.)

As set forth in Defendants' answer to the FTC's complaint, the Transaction will result in substantial merger-specific efficiencies, cost synergies and other procompetitive effects that will benefit patients suffering from rare and serious diseases, without causing any plausible harm to competition. (Dkt. 61 ¶¶ 12, 13.) This motion, however, does not require the Court to weigh the relative merits of the merger. Rather, the focus here is on several of the constitutional defects in the FTC's administrative process that require judgment to be entered in Defendants' favor regardless of those merits.

In this case the material "facts" that require the entry of judgment as a matter of law are largely embodied in the law itself or are otherwise not subject to reasonable dispute. Nevertheless, to the extent not readily discernible as a matter of statute or regulation, the relevant aspects of the FTC's structure and process are set forth in Defendants' accompanying Local Rule 56.1(a)(2) Statement of Material Facts (cited herein as "SMF ¶ ___") and made part of the constitutional analysis set forth below.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the issues "are primarily legal rather than factual, summary judgment is particularly appropriate." *Adler v. Madigan*, 939 F.2d 476, 478 (7th Cir. 1991) (quoting *Crain v. Bd. of Police Comm'rs*, 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

**ARGUMENT**

**I.  THE FTC'S UNBOUNDED DISCRETION TO BRING ADMINISTRATIVE PROCEEDINGS REFLECTS AN UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE POWER.**

Congress has delegated to the FTC the power to decide whether to bring antitrust enforcement actions in administrative proceedings rather than in Article III courts. *See* 15 U.S.C. §§ 45(b), 53(b). The "power to assign disputes to agency adjudication" is a "legislative power." *Jarkesy v. SEC,* 34 F.4th 446, 461 (5th Cir. 2022). Because Congress did not provide the FTC with an intelligible principle by which to exercise that legislative power, the delegation is unconstitutional. *See id.* at 462 (vacating judgment in enforcement action for impermissible delegation of legislative power to SEC).

Article I of the Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. The Supreme Court has "long … insisted that 'the integrity and maintenance of the system of government ordained by the Constitution' mandate that Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 371-72 (1989) (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892)).

The nondelegation doctrine "is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Id.* at 371.

Under the nondelegation doctrine, Congress cannot delegate legislative power to an executive agency unless it provides an "intelligible principle to which the [agency] is directed to conform." *Id.* at 372 (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928)).[2] A government action is "legislative" in nature if it has "the purpose and effect of altering the legal rights, duties and relations of persons . . . outside the legislative branch." *INS v. Chadha*, 462 U.S. 919, 952 (1983).

As a dozen states recently observed in an *amicus* brief addressing this same issue in the Fifth Circuit, "the decision over which forum will host agency adjudication—fundamentally a determination of 'which defendants should receive *certain legal processes*'—is a legislative, not executive, power."[3] The FTC's choice to sue Defendants in its own in-house court has the purpose and effect of altering their legal rights: it puts the Transaction's fate in the hands of the very Commissioners who commenced that administrative proceeding (rather than an Article III judge), in a forum where the FTC's self-made rules (rather than the Federal Rules of Evidence) apply, and where the FTC's decision is protected by deferential review.

No intelligible principle guides the FTC's approach—only its ever-shifting, point-in-time assessment of how many "bites at the apple" it might take to kill a transaction,

---

[2] Recognizing this Court is bound by precedent, Defendants preserve for Supreme Court review the argument that the "intelligible principle" standard should be replaced with a more constitutionally grounded standard.

[3] *Amicus* Brief of Indiana and Utah, Alaska, Arkansas, Georgia, Idaho, Iowa, Kentucky, Louisiana, Nebraska, South Carolina, and Virginia, in Support of Petitioners, *Illumina, Inc., and Grail, Inc. v. FTC*, No. 23-60167 (5th Cir.), Dkt. 128-1, filed June 12, 2023, at 6 (quoting *Jarkesy*, 34 F.4th at 462).

and whether the perceived odds of success justify the effort. Following a federal court decision, the FTC may continue with its administrative challenge or drop it. Once the FTC's ALJ renders a recommended decision, the FTC may reject the decision in whole or in part and issue its own decision adopting different findings of fact or conclusions of law. *See* 16 C.F.R. § 3.54. This process can take years, and permits the FTC to kill proposed transactions through delay rather than based on the substantive antitrust merits. Here, the FTC's decision to proceed administratively *and* in an Article III court reflects an unconstrained exercise of unconstitutionally delegated legislative power. Summary judgment is warranted on this basis alone, as the constitutional violation compels invalidation of an agency's decision. *See Jarkesy*, 34 F.4th at 462-63.

The Fifth Circuit addressed this very issue in *Jarkesy* with respect to a similar grant of power to the SEC. There, the court held that Congress failed to provide an intelligible principle by granting the SEC "exclusive authority and absolute discretion to decide whether to bring securities fraud enforcement actions within the agency instead of in an Article III court" without "indicating how the SEC should make that call in any given case." *Id.* at 462.

The same is true with respect to the FTC. Congress gave the FTC unfettered and unguided discretion to decide whether to bring antitrust enforcement actions in administrative proceedings instead of—or in addition to—Article III courts. *Cf. Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 897 (2023) (equating FTC and SEC authority in this respect). Indeed, the statutes authorizing SEC and FTC administrative proceedings are materially identical. *Compare* 15 U.S.C. § 78u-3(a) (authorizing SEC to bring administrative proceedings against "any person [who] is violating, has violated, or is

about to violate" the securities laws), *with* 15 U.S.C. § 45(b) (authorizing FTC to bring administrative proceedings against "any such person, partnership, or corporation [that] has been or is using any unfair method of competition"). Accordingly, the Fifth Circuit's reasoning in *Jarkesy* applies with equal force here.[4]

The FTC cannot avoid *Jarkesy* by pointing to the FTC Act's requirement that the Commission consider the "interest of the public." *See* 15 U.S.C. § 45(b) (authorizing FTC to commence administrative proceeding if in "the interest of public"); 15 U.S.C. § 53(b) (same for injunctive relief in district court). The mere mention of the "public interest" in a statute does not *ipso facto* establish an intelligible principle. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 521-23 & n.4 (1935) (finding improper delegation of legislative power in a statute with "public interest" language). Such an argument would defy both commonsense and *Jarkesy*. The statute in *Jarkesy* said "nothing at all" about how the SEC should choose between seeking penalties in court or administratively. 34 F.4th at 462. That was true despite extensive references to the "public interest" in the statutory provision cited by the Court, including six factors the SEC "may" consider when making a "determination of public interest." 15 U.S.C. § 78u-2(a)(1), (c); *see also* 15 U.S.C. § 78u-3 (referencing "public interest" concerning SEC's cease-and-desist power).

---

[4] The FTC may attempt to distinguish *Jarkesy* as turning on the SEC's ability to determine which enforcement actions do or do not give rise to a right to trial by jury. Neither the non-delegation holding in *Jarkesy* nor Defendants' non-delegation argument here depends on the right to a jury trial. Congress improperly delegated to the Commission the "power to decide which defendants should receive *certain legal processes* (those accompanying Article III proceedings) and which should not." *Jarkesy*, 34 F.4th at 462. That flaw exists regardless of whether a preliminary injunction is sought in an Article III court, a jury trial is commenced in an Article III court, or an enforcement action is brought administratively.

In short, because the FTC Act refers merely to the "interest of the public," without any criteria by which to assess that interest, the statutory text does not provide meaningful guidance for the Commission's choice *between* administrative (Part III) and judicial (district court) paths.

Lacking any argument based on the statute's plain language, the FTC may suggest that Section 13(b)'s "legislative history" helps guide FTC discretion. Reliance on snippets from legislative history is always fraught with peril. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 567 (2005). Such reliance is particularly dubious here. The fact that the FTC has relied on Section 13(b) in a wide variety of cases, including the many high-profile mergers it has challenged in federal court,[5] belies any claim that Congress intended the FTC to use Section 13(b) primarily to address "routine fraud case[s]." The FTC itself has acknowledged this in prior cases, where it has disavowed this legislative history and insisted the Agency "has often relied on Section 13(b) in a wide variety of non-'routine' cases." *FTC v. Surescripts, LLC*, 424 F. Supp. 3d 92, 99 (D.D.C. 2020). The FTC's vacillating (but consistently self-serving) understanding of Section 13(b)'s purpose is thus not a reliable guide to its meaning. *See, e.g.*, *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1346–47 (2021) (describing how

---

[5] *See, e.g.*, *FTC v. Microsoft Corp.*, No. 23-CV-02880-JSC, 2023 WL 4443412, at *8 (N.D. Cal. July 10, 2023); *FTC v. Meta Platforms*, No. 5:22-cv-04325-EJD, 2023 WL 2346238, at *1 (N.D. Cal. Feb. 3, 2023); *St. Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys.*, No. 1:12–CV–00560–BLW, 2014 WL 407446, at *20 (D. Idaho Jan. 24, 2014), *aff'd*, 778 F.3d 775 (9th Cir. 2015).

the Commission's interpretation of its authority under Section 13(b) "has evolved over time.").[6]

## II. THE FTC'S SIMULTANEOUS EXERCISE OF INVESTIGATIVE, PROSECUTORIAL AND ADJUDICATIVE POWERS VIOLATES DUE PROCESS.

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). This requirement applies to any adjudicative body, including administrative tribunals. *See Gibson v. Berryhill*, 411 U.S. 564, 579 n.17 (1973). Not only is a biased decisionmaker constitutionally unacceptable, but our legal system has "always endeavored to prevent even the probability of unfairness." *In re Murchison*, 349 U.S. at 136. While combining investigative, prosecutorial and adjudicative functions does not necessarily violate due process, *see Withrow v. Larkin*, 421 U.S. 35, 58 (1975), it does where "the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable", *id.* at 47. "[A]n unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

The potential for unconstitutional bias in the FTC's administrative process is intolerable. From beginning to end (including the black-box "clearance" process described in section IV below), the FTC's process features procedural irregularities and structural bias that deprive merging parties of a fair hearing before a neutral arbiter. The FTC votes out complaints following investigation, and decides whether to adopt, modify

---

[6] The FTC may suggest it has developed its own views of how the statutes should interact, but an agency cannot "cure an unlawful delegation of legislative power by adopting in its discretion a limiting construction of the statute." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 472 (2001).

or set aside the recommendation of its own ALJ—playing the roles of "investigator, prosecutor, and judge." *Axon*, 143 S. Ct. at 917 (Gorsuch, J., concurring). "The numbers reveal just how tilted this game is …. [S]ome say the FTC has not lost an in-house proceeding in 25 years." *Id.* This patently biased and one-sided regime, constrained only by after-the-fact, appellate-style judicial review in which an agency may hide behind claims of deference, is unconstitutional. *See id.* at 909-10 (Thomas, J., concurring).

The FTC's administrative hearings take place before the FTC's in-house ALJ. This "home-court advantage" translates into near inevitable FTC victory. And, as in the recent *Illumina* case, when lightning does strike before an ALJ, the Commission is standing in the wings to snatch victory from the jaws of that rare FTC defeat. *See* Decision of the FTC, *In the Matter of Illumina, Inc. and Grail, Inc.*, Docket No. 9401, (issued Mar. 31, 2023) (currently on appeal before the Fifth Circuit). The FTC gives itself *carte blanche* to reject its own ALJ's recommendation. *See* 16 C.F.R. § 3.54. Such a "heads I win, tails you lose" administrative process violates Defendants' right to due process.

Critiquing the bias implicit in the Commission serving as its own appellate tribunal, then-future Judge Posner observed that "[i]t is too much to expect men of ordinary character and competence to be able to judge impartially in cases that they are responsible for having instituted in the first place." Richard A. Posner, *The Federal Trade Commission*, 37 U. Chi. L. Rev. 47, 53 (1969). Having served as an attorney advisor to an FTC Commissioner in the 1960s, Judge Posner recognized the Commission's inevitable instinct for self-preservation, stressing that: "[a]n agency that dismissed many of the complaints that it issued would stand condemned of having

squandered the taxpayer's money on meritless cases. And, all question of bias aside, commissioners who lack the tenure, the high status, and the freedom from other duties that federal judges enjoy cannot realistically be expected to perform the judicial function as well." *Id.*

In *Williams*, the Supreme Court considered whether a state judge erred by declining to recuse himself from adjudicating an application to vacate a stay of execution even though 26 years earlier, as district attorney, he had approved prosecutors' decision to seek the death penalty. 579 U.S. at 6-8. The Court held that the judge's refusal to recuse based on that decades-old decision posed an impermissible risk of actual bias that violated the Due Process Clause. *Id.* at 14. There is a far greater risk of bias here than there was in *Williams* because the FTC is much more involved in the matter it seeks ultimately to adjudicate. Here, the FTC:

- issued Civil Investigative Demands;
- issued and received evidence from a searching "Second Request";
- met with, interviewed, and received evidence from potential witnesses;
- initiated this enforcement action and a parallel action in its administrative court, charging Petitioners with violating the law;
- engaged in settlement negotiations with Petitioners;
- issued press releases touting its enforcement efforts (SMF ¶ 10.);
- continues to exercise exclusive authority to supervise this federal action (15 U.S.C. § 56), which alleges precisely the same violation as in the administrative complaint.

Yet, the Commission intends—by pursuing a parallel administrative action— to judge its own Section 13 allegations. The Commission not only wears multiple hats (investigative, prosecutorial, and adjudicative), it does so simultaneously. Unlike the judge in *Williams*, who passed judgment in a different-but-related case 26 years after he

11

had acted as a supervising prosecutor, here the Commission seeks to put itself in a position to judge the very same case, shortly after its investigation and adjudication of its federal complaint—all while still acting as a chief enforcer of the antitrust laws. By so doing, the FTC runs roughshod over the precept that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Murchison*, 349 U.S. at 136.

III. **THE FTC'S PROCESS VIOLATES ARTICLE II BECAUSE ITS KEY ACTORS (ALJs AND COMMISSIONERS) EXERCISE EXECUTIVE POWERS WHILE RESTRICTED FROM PRESIDENTIAL REMOVAL.**

Under Article II, "the 'executive Power'—all of it—is 'vested in a President,' who must "take Care that the Laws be faithfully executed." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020) (quoting U.S. Const. art. II, § 1; cl. 1; *id.*, § 3). In order to discharge that responsibility, the President must rely on subordinate officers. *See id.* at 2197. Because these subordinates "must remain accountable to the President, whose authority they wield," the President's executive power includes "appointing, overseeing, and controlling" such officers. *Id.* And, as "has been long confirmed by history and precedent," that power "generally includes the ability to remove" such officers on an "unrestricted" basis. *Id.* at 2197-98; *see also Myers v. United States*, 272 U.S. 52, 164 (1926) (noting that "to hold otherwise would make it impossible for the President . . . to take care that the laws be faithfully executed").

Only in limited circumstances have the courts allowed any restrictions on the President's removal power. Removal restrictions may be appropriate for certain "inferior" officers who lack policymaking or significant administrative authority. *See Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 493 (2010). Additionally, almost 90 years ago in a case involving the FTC as it then existed, the

Court held that Congress could grant for-cause removal protections to a multimember body of experts that did not exercise executive power but instead performed "quasi-judicial" or "quasi-legislative" functions. *Humphrey's Ex'r v. United States*, 295 U.S. 602, 628 (1935).

As shown below, neither of these limited sets of circumstances is present here. Accordingly, the general rule against restrictions on the presidential removal power applies. The existing restrictions on removal of the FTC's ALJs and Commissioners are constitutionally impermissible.

**A.    FTC ALJs Are Executive Officers Who Must Remain Subject to Presidential Removal.**

The Supreme Court recently examined the function and scope of authority wielded by SEC ALJs and determined that these government actors are "Officers of the United States," within the meaning of the Constitution. *Lucia v. SEC*, 138 S. Ct. 2044, 2053-54 (2018). Among the consequences of this status is that these officials must be appointed in conformance with the Appointments Clause. *See id.* at 2051. Because the ALJ that presided over the enforcement proceeding in *Lucia* was not so appointed, the Court vacated the underlying judgment. *See id.* at 2055.

Like their counterparts at the SEC, FTC ALJs may be "appoint[ed]" by their respective Commissions. *See* 5 U.S.C. § 3105 (governing appointments of ALJs). At both agencies, these officials are empowered to ensure fair and orderly adversarial hearings, and thus "exercis[e] significant authority pursuant to the laws of the United States." *Freytag v. Comm'r of Internal Rev.*, 501 U.S. 868, 881 (1991) (quoting *Buckley v. Valeo,* 424 U.S. 1, 126 (1976)). Both "take testimony," "conduct trials," "administer oaths, rule on motions, and generally 'regulat[e] the course of' a hearing, as well as the

13

conduct of parties and counsel[.]" *Lucia*, 138 S. Ct. at 2053 (quoting 17 C.F.R. § 201.111(c)) (SEC ALJs). And these officials at both agencies "have all powers necessary" to conduct the proceedings over which they preside. 16 C.F.R. § 3.42(c) (FTC ALJs); *see* 17 C.F.R. §§ 201.111, 200.14(a) (SEC ALJs). Accordingly, FTC ALJs, like SEC ALJs, are "Officers of the United States."[7]

This status carries consequences with respect to not only the appointment of these officials but also their removal. As "Officers of the United States" within the meaning of Article II, FTC ALJs must remain subject to Presidential removal. As it stands, FTC ALJs are insulated from Presidential removal by *two* layers of protection. *See In re Otto Bock HealthCare N. Am., Inc.*, 2019 WL 5957363, at *49 (FTC Nov. 1, 2019) (acknowledging that FTC ALJs enjoy dual-layer protection from presidential removal). FTC ALJs may be removed only "for good cause established and determined by" someone other than the President—namely the Merit Systems Protection Board ("MSPB"). *See* 5 U.S.C. § 7521(a). For their part, MSPB members may be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41. Under the Supreme Court's decision in *Free Enterprise Fund*, such a multi-layered protection is unconstitutional.

In *Free Enterprise Fund*, the Supreme Court considered in the context of the Public Company Accounting Oversight Board whether "separate layers of protection may

---

[7] The Commission recently changed its rules so that ALJs issue a "recommended decision" (no longer an "initial decision") that will be "automatically reviewed" by the same Commissioners who voted to authorize the administrative complaint. 16 C.F.R. Parts 0-4, Revisions to Rules of Practice. That change does not inoculate the FTC's administrative process from constitutional challenge. In fact, to the extent this change would tend to diminish the ALJ's role and expand the Commissioners' role as adjudicators, it provides more reason for constitutional concern.

be combined"—that is, whether the President may "be restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer determines the policy and enforces the laws of the United States." 561 U.S. at 483-84. In particular, the decision to remove members of the PCAOB—a board with "expansive powers to govern an entire industry," *id.* at 485, was vested not in the President but in the Commissioners of the SEC, *see id.* at 486. The SEC Commissioners themselves were removable only for cause and were therefore not subject to the President's direct control. *Id.* at 487. The result is "a [PCAOB] that is not accountable to the President, and a President who is not responsible for the [PCAOB]." *Id.* at 495. The Court held that "such multilevel protection from removal is contrary to Article II's vesting of the executive power in the President." *Id.* at 484.

The removal process for FTC ALJs is materially indistinguishable from the removal process the Supreme Court found unconstitutional in *Free Enterprise Fund*. "Neither the President, nor anyone directly responsible to him, nor even an officer whose conduct he may review only for good cause, has full control over [FTC ALJs]." *Free Enter. Fund*, 561 U.S. at 496. These removal procedures are therefore "contrary to Article II's vesting of the executive power in the President." *Id.* at 484.

The Fifth Circuit addressed this issue in *Jarkesy*. The *Jarkesy* court explained that SEC ALJs could only be removed by the SEC Commissioners upon a finding of good cause by the Merit Systems Protection Board. 34 F.4th at 464. In turn, both SEC Commissioners and MSPB members can only be removed by the President for cause. *Id.* Observing that SEC ALJs were thereby "insulated from the President by at least two

15

layers of for-cause protection from removal," the Court held the removal process

unconstitutional. *Id.* The same reasoning applies here.

> **B.** **FTC Commissioners Are Executive Officers Who Must Remain Subject to Presidential Removal.**

In 1935, the Supreme Court upheld the constitutionality of a provision insulating

FTC Commissioners from removal by the President absent "inefficiency, neglect of duty,

or malfeasance." *Humphrey's Ex'r*, 295 U.S. at 623-32. As the Supreme Court has

subsequently admonished, however, the holding in *Humphrey's Executor* rested on the

premise that the FTC—"as it existed in 1935"—exercised "'no part of the executive

power.'" *Seila Law*, 140 S. Ct. at 2198 (quoting *Humphrey's Ex'r*, 295 U.S. at 628).

Instead, the Court in *Humphrey's Executor* understood that the FTC in 1935 exercised

*only* "quasi-legislative or quasi-judicial powers"—*i.e.*, "'making investigations and

reports' to Congress" and "making recommendations to courts as a master in chancery."

*Id.* at 2198-99 (quoting *Humphrey's Ex'r*, 295 U.S. at 628). As the Court has since

clarified, *Humphrey's Executor* thus established only a narrow "exception" for

multimember expert agencies that "perform legislative and judicial functions" and do not

exercise "any executive power." *Id.* at 2199.

Nearly 90 years have passed since *Humphrey's Executor*, and the Supreme Court

has recognized that its understanding of the FTC in 1935 "has not withstood the test of

time[.]" *Seila Law*, 140 S. Ct. at 2198 n.2. The modern FTC is far removed from the

"quasi-legislative or quasi-judicial" body the Supreme Court considered in that case. *See*

Daniel A. Crane, *Debunking Humphrey's Executor*, 83 GEO. WASH. L. REV. 1835, 1859-

68 (2015). As this case illustrates, today's FTC operates primarily as an enforcement

agency—bringing suit in both administrative proceedings and federal court for injunctive

and monetary relief—that bears no resemblance to the "quasi-legislative or quasi-judicial" body described in *Humphrey's Executor*.[8]

The Court has not yet taken up the question of whether to overrule *Humphrey's Executor*. Nevertheless, given the agency's current function, the reasoning of *Seila Law* is compelling and the more appropriate standard for assessing today's FTC. Because the FTC today is fundamentally different from the "quasi-legislative or quasi-judicial" body described in *Humphrey's Executor*, that case should not control the separation-of-powers question presented here. *See Seila Law*, 140 S. Ct. at 2198, 2200 & n.4. Instead, this case should be determined by the traditional jurisprudence governing the President's power to remove executive officers, including the Court's decision in *Myers*, 272 U.S. at 163-64, invalidating a for-cause removal restriction on executive officers. *See Free Enter. Fund*, 561 U.S. at 483, 492-93. Under the traditional rule, FTC Commissioners are improperly shielded from Presidential removal under Article II. To the extent the Court nevertheless concludes that *Humphrey's Executor* is controlling, Defendants preserve the argument that the Supreme Court should overrule its stale holding.

## IV. THE GOVERNMENT'S ARBITRARY "PROCESS" FOR ASSIGNING MERGER ENFORCEMENT DEPRIVES DEFENDANTS OF THEIR RIGHT TO EQUAL PROTECTION.

The Equal Protection Clause protects against "arbitrary and irrational discrimination" by the Government, *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71,

---

[8] Unlike the FTC of 1935, today's FTC has significant enforcement authority under the FTC Act. For example, in 1935, an FTC cease-and-desist order was not enforceable until the agency filed an application for review by a circuit court, which could then issue a final, enforceable judgment. *See* 15 U.S.C. § 45 (1934). By contrast, an FTC cease-and-desist order today is final and enforceable 60 days after entry by the Commission, and violations carry a civil penalty of $50,120 (adjusted for inflation) that the FTC can enforce in federal district court. *See* 15 U.S.C. §§ 45(c), 45(g), 45(l), 56(a) (2018); 88 F.R. 1499 (effective January 11, 2023).

83 (1988), and demands that "all persons similarly situated should be treated alike,"
*Tennessee v. Lane*, 541 U.S. 509, 522 (2004) (citation omitted). "The guaranty of 'equal
protection of the laws is a pledge of the protection of equal laws.'" *Romer v. Evans*, 517
U.S. 620, 633-34 (1996) (quoting *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535,
541 (1942)). Differential treatment "run[s] afoul of the Equal Protection Clause" when
there is no "rational relationship between the disparity of treatment and some legitimate
governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993).

The FTC and the Antitrust Division of DOJ share responsibility for enforcing the
antitrust laws, including evaluating the competitive effects of proposed mergers. For any
given merger, however, only one agency reviews the merger and pursues any subsequent
enforcement action. The substantive and procedural differences between the two
agencies are significant and, for merging parties that are assigned to the FTC, have real
consequences. Yet the process by which the government allocates merger evaluations is
quintessentially arbitrary and irrational, in violation of the Equal Protection Clause.

For example, parties to a merger challenged by DOJ are entitled to a federal court
adjudication by a single factfinder where (1) the Federal Rules of Evidence and Civil
Procedure apply, (2) the traditional test for injunctive relief applies, and (3) any appeal is
heard by a court of appeals that applies the clearly-erroneous standard to any factual
determinations. 15 U.S.C. § 25; *United States v. Gillette Co.*, 828 F. Supp. 78, 80
(D.D.C. 1993) (applying traditional four-part test for injunctive relief); *United States v.
Baker Hughes, Inc.*, 908 F.2d 981, 983 (D.C. Cir. 1990) (citing Fed. R. Civ. P. 52(a)).

In stark contrast, parties to a merger challenged by the FTC are not entitled to the
following procedural safeguards:

- Adjudication in federal district court. At the FTC's election, they can be compelled to litigate in an internal administrative proceeding, district court or both. If the parties successfully defend the merger first in district court, they could be forced to retry the merits in the FTC's own administrative proceeding. 15 U.S.C. §§ 45(b), 53(b).

- The traditional, four-part showing required for injunctive relief under common law. 15 U.S.C. § 53(b)(2); *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 714 (D.C. Cir. 2001).

- An independent factfinder, *i.e.*, an Article III judge appointed by the President and confirmed by the Senate. Instead, they face an FTC ALJ whom the Commission can replace at any time, and the very Commissioners who voted out the case, charged Defendants and prosecuted a parallel federal action. 16 C.F.R. §§ 3.42(a), 3.54.

- The protections of the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Instead, they are subject to rules created by the FTC itself, do not necessarily enjoy the protections of the Federal Rules, and must petition their accuser for relief from subpoenas and Civil Investigative Demands. 16 C.F.R. § 2.7(i).

- Factual review under the clearly erroneous standard. Instead, they are subject to factual review under the lesser, substantial-evidence standard. *See Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381, 1385 (7th Cir. 1986) ("Our only function is to determine whether the [FTC's] analysis of the probable effects of these acquisitions . . . is so implausible, so feebly supported by the record, that it flunks even the deferential test of substantial evidence.").

Given the dramatically different and far inferior procedural protections afforded parties to a merger reviewed by the FTC rather than DOJ, one would expect the government to employ a rational basis when deciding to assign a given merger to one agency or the other. Not so. Whether a merger review (and any subsequent challenge) is conducted by DOJ or the FTC is decided by the agencies themselves through an informal, non-public, unwritten "clearance" process. (SMF ¶¶ 4-7.) At times, this determination is so arbitrary and unprincipled that it is made by coin flip. (SMF ¶ 7.) The "clearance" process provides no rational basis for why particular industries (such as pharmaceuticals

19

in this case) receive disparate treatment from others, including inferior procedural protections at the FTC.

The "clearance" process serves no legitimate governmental purpose, and there is no rational relationship between any supposed governmental purpose and the disparate treatment that process imposes on Defendants. Accordingly, the "clearance" process and its arbitrary assignment of the Amgen-Horizon merger to FTC violates Defendants' equal protection rights.

**<u>CONCLUSION</u>**

For the above reasons, should the Court reach the constitutional questions presented by their counterclaims, Defendants respectfully request that summary judgment be entered in their favor.

Dated:  August 21, 2023

New York, New York

Respectfully submitted,

| | |
|---|---|
| */s/ David R. Marriott* | */s/ Ethan Glass* |
| David R. Marriott | Ethan Glass |
| dmarriott@cravath.com | eglass@cooley.com |
| Timothy G. Cameron (*admitted pro hac vice*) | Jacqueline Grise (admitted pro hac vice) |
| tcameron@cravath.com | jgrise@cooley.com |
| Daniel K. Zach (*admitted pro hac vice*) | David Burns (admitted pro hac vice) |
| dzach@cravath.com | dburns@cooley.com |
| Jesse M. Weiss (*admitted pro hac vice*) | COOLEY LLP |
| jweiss@cravath.com | 1299 Pennsylvania Avenue, NW |
| CRAVATH, SWAINE & MOORE LLP | Suite 700 |
| 825 Eighth Avenue | Washington, DC 20004 |
| New York, New York 10019 | Telephone: (202) 842-7800 |
| Telephone:  (212) 474-1000 | Facsimile: (202) 842-7899 |
| Facsimile:  (212) 474-3700 | |

Renata B. Hesse (*admitted pro hac vice*)
hesser@sullcrom.com
Samantha F. Hynes (*admitted pro hac vice*)
hyness@sullcrom.com
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Washington, DC 20006
Telephone:  (202) 956-7575

Matthew Kutcher
mkutcher@cooley.com
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 881-6500
Facsimile: (312) 881-6598

James R. Figliulo
jfigliulo@sgrlaw.com
Dylan Smith
dylansmith@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLP
10 S. LaSalle, Suite 3600
Chicago, IL 60603
Telephone: (312) 360-6000
Facsimile: (312) 360-6520

*Attorneys for Defendant Horizon
Therapeutics plc*

*Attorneys for Defendant Amgen Inc.*