# Exhibit 1



# Premerger Notification and the Merger Review Process

Under the Hart-Scott-Rodino (HSR) Act, parties to certain large mergers and acquisitions must file premerger notification and wait for government review. The parties may not close their deal until the waiting period outlined in the HSR Act has passed, or the government has granted early termination of the waiting period. The FTC administers the premerger notification program, and its staff members answer questions and maintain a website with helpful information about how and when to file. The FTC also provides daily updates of deals that receive early termination.

## Steps in the Merger Review Process

### Step One: Filing Notice of a Proposed Deal

Not all mergers or acquisitions require a premerger filing. Generally, the deal must first have a minimum value and the parties must be a minimum size. These filing thresholds are updated annually. In addition, some stock or asset purchases are exempt, as are purchases of some types of real property. For further help with filing requirements, see the FTC's Guides to the Premerger Notification Program. There is a filing fee for premerger filings.

For most transactions requiring a filing, both buyer and seller must file forms and provide data about the industry and their own businesses. Once the filing is complete, the parties must wait 30 days (15 days in the case of a cash tender offer or a bankruptcy) or until the agencies grant early termination of the waiting period before they can consummate the deal.

### Step Two: Clearance to One Antitrust Agency

Parties proposing a deal file with both the FTC and DOJ, but only one antitrust agency will review the proposed merger. Staff from the FTC and DOJ consult and the matter is "cleared" to one agency or the other for review (this is known as the "clearance process"). Once clearance is granted, the investigating agency can obtain non-public information from various sources, including the parties to the deal or other industry participants.

### Step Three: Waiting Period Expires or Agency Issues Second Request

After a preliminary review of the premerger filing, the agency can:

1. terminate the waiting period prior to the end of the waiting period (grant Early Termination or "ET");

2. allow the initial waiting period to expire; or

3. issue a Request for Additional Information ("Second Request") to each party, asking for more information.

If the waiting period expires or is terminated, the parties are free to close their deal. If the agency has determined that it needs more information to assess the proposed deal, it sends both parties a Second Request. This extends the waiting period and prevents the companies from completing their deal until they have "substantially complied" with the Second Request and observed a second waiting period. A Second Request typically asks for business documents and data that will inform the agency about the company's products or services, market conditions where the company does business, and the likely competitive effects of the merger. The agency may conduct interviews (either informally or by sworn testimony) of company personnel or others with knowledge about the industry.

## Step Four: Parties Substantially Comply with the Second Requests

Typically, once both companies have substantially complied with the Second Request, the agency has an additional 30 days to review the materials and take action, if necessary. (In the case of a cash tender offer or bankruptcy, the agency has 10 days to complete its review and the time begins to run as soon as the buyer has substantially complied.) The length of time for this phase of review may be extended by agreement between the parties and the government in an effort to resolve any remaining issues without litigation.

## Step Five: The Waiting Period Expires or the Agency Challenges the Deal

The potential outcomes at this stage are:

1. close the investigation and let the deal go forward unchallenged;

2. enter into a negotiated consent agreement with the companies that includes provisions that will restore competition; or

3. seek to stop the entire transaction by filing for a preliminary injunction in federal court pending an administrative trial on the merits.

Unless the agency takes some action that results in a court order stopping the merger, the parties can close their deal at the end of the waiting period. Sometimes, the parties will abandon their plans once they learn that the agency is likely to challenge the proposed merger.

In many merger investigations, the potential for competitive harm is not a result of the transaction as a whole, but rather occurs only in certain lines of business. One example would be when a buyer competes in a limited line of

products with the company it seeks to buy. In this situation the parties may resolve the concerns about the merger by agreeing to sell off the particular overlapping business unit or assets of one of the merging parties, but then complete the remainder of the merger as proposed. This allows the procompetitive benefits of the merger to be realized without creating the potential for anticompetitive harm. Many merger challenges are resolved with a consent agreement between the agency and the merging parties.

Previous:  
Frequently Asked Questions About Merger Consent Order Provisions

Up